Filed 8/1/23  P. v. Rodriguez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARDO ALFREDO RODRIGUEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B325845<br>(Super. Ct. No. VA124544)<br>(Los Angeles County) |

Edwardo Alfredo Rodriguez appeals the denial of his petition for resentencing on his 2013 conviction of second degree murder (Pen. Code,[1] §§ 187, subd. (a); 189, subd. (b).) pursuant to section 1172.6 (former § 1170.95).[2]  We affirm.

---

[1] All statutory references are to the Penal Code.

[2] Effective June 30, 2022 section 1175.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58. §10).

The facts underlying appellant's conviction are derived verbatim from our unpublished opinion affirming the conviction. (*People v. Rodriguez*, May 27, 2014, B248552 [nonpub. opn.].) "At about midnight on May 10, 2011, appellant and Eduardo 'Dingo' Gonzalez were driving in an Isuzu Trooper in South Gate when they saw Guillermo Elisea. Gonzalez fatally shot Elisea twice in the back and the Trooper sped away. [¶] Several weeks later, the police went to Gonzalez's residence and recovered a .40-caliber pistol. Tests confirmed that expended casings and a bullet found at the scene of the shooting were fired from the pistol.

"Following his arrest, appellant was placed in a cell along with two sheriff's deputies posing as inmates. In a recorded conversation that was played for the jury, appellant told the deputies he was riding with his 'brother' Dingo when Dingo spotted Elisea standing in front of an apartment building. Dingo had been 'hunting' Elisea due to a dispute over a woman. Dingo switched seats with appellant and shot Elisea multiple times in the back before appellant drove away. Appellant took the expended casings and flushed them down a toilet. He then parked the Trooper in Riverside on property owned by his girlfriend's brother. Appellant also said the police found the murder weapon when they searched Dingo's house. [¶] The police subsequently found the Trooper where appellant said he had parked it."

A jury convicted appellant of second degree murder and found true allegations that a principal personally used and intentionally discharged a firearm in committing the offense (§§ 12022.53, subds. (b)-(d)). The trial court sentenced him to 15 years to life in state prison.

In February 2022, appellant filed a petition for resentencing under section 1172.6.  Appellant's petition alleged among other things that "[a] complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ."

After counsel was appointed, the prosecution filed an opposition to the petition on the ground that appellant had not been tried on theories of felony murder or the natural probable consequences doctrine, or any other theory under which malice might have been improperly imputed to him.  For support, the prosecution offered the jury instructions given at appellant's trial, which demonstrated he had been prosecuted on the theory that he directly aided and abetted the murder of which he was convicted and that no instructions on felony murder or the natural and probable consequences doctrine were given.  The trial court denied the petition on that ground.

We appointed counsel to represent appellant in this appeal. After reviewing the record, counsel filed a brief raising no issues in accordance with *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) and requested that we independently review the record for error.  We advised appellant of his right to personally submit any contentions or issues he wished us to consider. Appellant subsequently filed a supplemental brief in which he claims that the jury in his case *was* instructed on the natural and

3

probable consequences theory of aider and abettor liability.[3] The record belies this claim.

Section 1172.6 was enacted pursuant to Senate Bill (SB) 1437, which amended sections 188 and 189 to limit the reach of the felony murder rule in cases of first and second degree murder and eliminated the natural and probable consequences liability for murder. (Stats. 2018, ch. 1015, eff. Jan. 1, 2019.) Section 1172.6 was added to provide a procedure for convicted persons who could not be convicted under the statutes as amended to retroactively obtain relief. (*Id.*, § 4.) To meet his burden under the statute, appellant had to make a prima facie showing that all of the components of section 1172.6, apply, i.e., that "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."

After receiving the petition and appointing counsel, the trial court was required to evaluate the petition to determine whether it set forth a prima facie case for relief. (§ 1172.6, subds. (a)-(c); *People v. Strong* (2022) 13 Cal.5th 698, 708.) This showing

---

[3] Because appellant filed a supplemental brief, we are "required to evaluate the specific arguments presented in that brief and . . . issue a written opinion." (*Delgadillo, supra*, 14 Cal.5th at p. 232.)

is not made if "'the record [of conviction], including the court's own documents, "contain[] facts refuting the allegations made in the petition . . . .""'" (*People v. Lewis* (2021) 11 Cal.5th, 952 971.) If the record demonstrates that the petition fails as a matter of law, the trial court may summarily deny it. (*Id.* at p. 974.)

The trial court correctly found that appellant had failed to set forth a prima facie case for resentencing relief under section 1172.6 because the record of his conviction conclusively demonstrates he was neither tried nor convicted of murder on a theory of imputed malice rather than actual or implied malice. Appellant's argument to the contrary misquotes CALJIC No. 3.00, which defines principals to crimes and makes no reference to felony murder or the natural and probable consequences doctrine. Although appellant notes that the instruction on malice aforethought (CALJIC No. 8.11) allowed the jury to find he acted with implied malice if, among other things, the killing resulted from an intentional act and "[t]he natural consequences of the act [were] dangerous to human life," this theory of second degree implied malice murder remains valid notwithstanding the changes effected by SB 1437. (*People v. Reyes* (2023) 14 Cal.5th. 981, 990.)

The judgment is affirmed.
NOT TO BE PUBLISHED.


                                        CODY, J.

We concur:



GILBERT, P. J.                YEGAN, J.



5

Lee S. Tsao, Judge
Superior Court County of Los Angeles

_____

Sharon Fleming, under appointment by the Court of
Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.